KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
Jeffrey N. Rich (JR 7183)
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 536-3900
Facsimile: (212) 536-3901

Attorneys for Defendants, Saks Incorporated,
Saks Fifth Avenue, Inc., Carson Pirie Scott,
Parisian, Inc., Younkers, Profitt's and McRaes, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

In re KLEINERT'S, INC. et al.

    Debtors,
-----------------------------------------------------------X
DAVID R. KITTAY, TRUSTEE,

    Plaintiff,

against

SAKS INCORPORATED, SAKS FIFTH
AVENUE, INC., CARSON PIRIE
SCOTT, PARISIAN, INC., YOUNKERS,
PROFITT'S and MCRAES, INC.,

    Defendants.
-----------------------------------------------------------X

: Chapter 7

: Case No. 03 B 41140 (BRL)

: Jointly Administered

: Adv. Pro. No. 05-3067 (BRL)

: Case No. _____

**DEFENDANTS' MOTION FOR WITHDRAWAL
OF THE REFERENCE PURSUANT TO 28 U.S.C. 157(D)**

To: The Honorable P. Kevin Castel,
   United States District Judge

  Saks Incorporated, Saks Fifth Avenue, Inc., Carson Pirie Scott, Parisian, Inc., Younkers, Profitt's and McRaes, Inc. (collectively, the "Saks Defendants") hereby move,

NY-526751 v3

pursuant to 28 U.S.C. § 157(d), for the entry of an order withdrawing the reference of the adversary proceeding captioned as <u>Kittay v. Saks Inc. et al.</u>, Adversary No. 05-3067 (BRL) (the "Adversary Proceeding"), which is presently pending before the Honorable Burton R. Lifland in the United States Bankruptcy Court for the Southern District of New York.

## PRELIMINARY STATEMENT

1. In the Adversary Proceeding, David R. Kittay (the "Trustee"), the chapter 7 trustee of the jointly-administered bankruptcy estates of Kleinert's, Inc., Kleinert's, Inc. of New York, Kleinert's, Inc. of Alabama, Kleinert's Retail, Inc., and Kleinert's, Inc. of Delaware (collectively, the "Debtors") has asserted claims against the Saks Defendants for, among other things, unjust enrichment, fraud, fraudulent transfers, conversion, aiding and abetting breach of fiduciary duty, and tortious interference with prospective economic advantage, all arising out of the Saks Defendants' alleged assessment of improper chargebacks in connection with the purchase of childrens' apparel from the Debtors during the period of 1998 through 2003.[1]

2. The factual context and legal issues raised by the Trustee's Complaint are similar to those presented by the matter of <u>International Design Concepts, Ltd. v. Saks Inc.</u>, 05 CV 4754 (PKC-MHD) (the "IDC Action"), which is already pending before this Court, and which also includes claims relating to the assessment of allegedly improper chargebacks by certain of the Saks Defendants.

3. While the <u>Kleinerts</u> and <u>IDC</u> cases are not necessarily suitable for wholesale consolidation pursuant to Fed. R. Civ. P. 42 due to the unique circumstances of each plaintiff's relationship with the Saks Defendants, withdrawal of the reference would clearly serve

---

[1] A copy of the Trustee's First Amended Complaint (the "Amended Complaint") is annexed to the Affidavit of Jeffrey N. Rich in Support of Defendants' Motion for Withdrawal of the Reference Pursuant to 28 U.S.C. § 157(d) (the "Rich Affidavit"), which is being filed concurrently herewith, as Exhibit A.

2

the interests of judicial economy by allowing both cases to proceed before a single judge who is already familiar with the Saks Defendants' chargeback practices, as well as the relevant customs in the apparel industry. Withdrawal of the reference would also avoid the possibility for inconsistent judgments regarding common issues of law, including the proper interpretation of the "8/10 EOM" term, which is present in both the Kleinerts and IDC cases.

4.  Withdrawal of the reference is particularly appropriate in this case because the claims asserted in the Adversary Proceeding are common law damage claims, with respect to which the Bankruptcy Court may only make a report and recommendations under 28 U.S.C. § 157. Moreover, the Saks Defendants have asserted their constitutional right to a jury trial,[2] which cannot be held in the Bankruptcy Court without their express consent. Thus, withdrawal of the reference at this time would not only promote the efficient and economical litigation of the Adversary Proceeding in coordination with the IDC Action, it would also protect the Saks Defendants' statutory and constitutional rights to have this case resolved by an Article III judge.

5.  Finally, because witness interviews and deposition discovery in the Adversary Proceeding have been stayed for the past six months due to the pendency of a criminal action against certain of the Debtors' former officers and directors, withdrawal of the reference at this time would not disrupt or otherwise delay the orderly progression of the case. This Court can assume jurisdiction over the Adversary Proceeding upon the resumption of discovery, and coordinate the completion of fact and expert discovery, dispositive motions practice, and an eventual trial without interrupting any existing pretrial deadlines.

---

[2] A copy of the Saks Defendants' Answer, which includes a demand for a jury trial, is annexed to the Rich Affidavit as Exhibit B.

6. Thus, for the reasons that follow, the Saks Defendants respectfully request this Court to enter an order withdrawing the reference of the Adversary Proceeding from the Bankruptcy Court.

## FACTUAL BACKGROUND

### A. The Kleinerts Adversary Proceeding

7. On May 7, 2003 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code"). The Debtors' bankruptcy cases were subsequently converted to chapter 7 in August 2003, and the Trustee was appointed to administer their estates.

8. On October 25, 2005, the Trustee filed an initial complaint (the "Original Complaint")[3] against the Saks Defendants, and therein asserted claims for breach of contract, breach of the implied duty of good faith and fair dealing, fraud, unjust enrichment, tortious interference with prospective economic advantage, quantum meruit, and conversion, all relating to the Saks Defendants' alleged assessment of improper chargebacks against the Debtors.

9. On October 10, 2006, the Trustee filed his Amended Complaint against the Saks Defendants, in which, without altering the essential factual predicate for his claims (i.e. the Saks Defendants' alleged collection of improper chargebacks), the Trustee jettisoned his legal claims for breach of contract, and added claims for conversion, aiding and abetting breach of fiduciary duty, aiding and abetting fraud, and various state law claims for fraudulent conveyance.[4]

10. On October 17, 2006, the Bankruptcy Court entered an order, with the consent of the parties, and at the request of the Assistant United States Attorney for the Eastern

---

[3]   A copy of the Original Complaint is annexed to the Rich Affidavit as Exhibit C.
[4]   Rich Affidavit, Ex. A.

District of Pennsylvania responsible for prosecuting a criminal action (the "Criminal Proceeding") against certain former officers and directors of the Debtors, postponing all witness interviews and deposition discovery in the Adversary Proceeding until after the conclusion of the Criminal Proceeding.

11. On February 20, 2007, following the Bankruptcy Court's denial of a motion to dismiss, the Saks Defendants filed an answer to the Amended Complaint, in which they, among other things: (i) denied the Trustee's right to relief; (ii) refused to consent to an entry of a final order by the Bankruptcy Court; and (iii) demanded a jury trial.[5]

**B.     The IDC Action**

12. On May 17, 2005, International Design Concepts, LLC ("IDC") filed a complaint against Saks Incorporated and Saks Fifth Avenue, Inc. (collectively, "Saks"), which has since been amended on two different occasions.

13. The most recent iteration of IDC's complaint against Saks asserted claims for: (i) breach of contract; (ii) fraud; (iii) tortious interference; (iv) allegedly deceptive trade acts in violation of N.Y. General Business Law § 349; (v) alleged violations of the Uniform Commercial Code; and (vi) unjust enrichment and *quantum meruit*.

14. While IDC seeks recovery under a variety of different legal theories, the factual predicate for all of the claims in the IDC action is that Saks allegedly assessed improper chargebacks against Apparel Group International ("AGI"), a predecessor to IDC, and thereby drove AGI out of business.

15. Among other things, IDC alleges that Saks assessed improper chargebacks based on the 8/10 EOM term contained in the relevant invoices, which IDC claims is a discount

---

[5]     Rich Affidavit, Ex. B, ¶ 8.

5

for timely payment, notwithstanding the fact that the universal understanding in the apparel industry is that 8/10 EOM signifies a trade discount.

16. While the Trustee's Amended Complaint does not include any specific reference to this 8/10 EOM issue, the Saks Defendants understand that the Trustee intends to pursue a recovery based on an argument similar to that being advanced by IDC.

## ARGUMENT

### A. APPLICABLE LEGAL STANDARDS

17. Pursuant to 28 U.S.C. § 157(a), and by standing order dated July 10, 1984 (Ward, Acting C.J.), this Court has provided for the automatic referral to the Bankruptcy Court of all proceedings arising under title 11 or arising in or related to a case under title 11.

18. The Bankruptcy Court is thus empowered to "hear and determine all core proceedings arising under title 11 or arising in a case under title 11" and to "enter appropriate orders and judgments," subject only to appellate review by the district courts. 28 U.S.C. § 157(b)(1).

19. The Bankruptcy Court may also "hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11." 28 U.S.C. § 157(c)(1). However, with respect to such non-core matters, a bankruptcy judge may not enter a final order or judgment absent consent of the parties, and must instead "submit proposed findings of fact and conclusions of law to the district court." Id. The district court may then enter a final order or judgment in such a non-core proceeding "after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected." Id.

20. Regardless of the core or non-core nature of the proceeding, the district courts always retain the authority to "withdraw, in whole or in part, any case or proceeding referred under [28 U.S.C. § 157(a)], on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d).

21. In determining whether cause exists to withdraw the reference of a particular proceeding, a district court "should first evaluate whether the claim is core or non-core, since it is upon this issue that questions or efficiency and uniformity will turn." Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.), 4 F.3d 1095, 1101 (2d Cir. 1993); see also Valley Forge Plaza Associates v. Fireman's Fund Ins. Co., 107 B.R. 514, 516 (E.D. Pa. 1989) ("The reference is much more likely to be withdrawn if the proceeding is characterized as non-core since . . . a bankruptcy judge may not enter a final order or judgment in non-core proceedings.").

22. Once an initial determination is made regarding the core or non-core nature of the claim, the district court should consider "questions of efficient use of judicial resources, delay and costs to the parties, uniformity in bankruptcy administration, the prevention of forum shopping, and other related factors." Id.; see also South Street Seaport L.P. v. Burger Boys, Inc. (In re Burger Boys, Inc.), 94 F.3d 755, 762 (2d Cir. 1996).

23. The court should also consider the presence or absence of a jury demand since "[i]f a case is non-core and a jury demand has been filed, the district court might find that the inability of the bankruptcy court to hold the trial constitutes cause to withdraw the reference." Orion, 4 F.3d at 1101.

B.  **Cause Exists for Withdrawal of the Reference of the Adversary Proceeding**

24.  In this case, the most relevant factors of the Orion analysis – namely, the non-core character of the Trustee's claims, the Saks Defendants' demand for a jury trial, and the efficient use of judicial and party resources – all militate strongly in favor of withdrawal of the reference, while the remaining factors – prevention of forum shopping and uniformity in bankruptcy administration – are largely irrelevant.

1.  **The Trustee's Claims Are Non-Core**

25.  The Trustee asserts in his Amended Complaint that his claims constitute core proceedings under 28 U.S.C. §§ 157(b)(2)(A), (E), (H) and (O). (Amended Complaint, ¶ 8).

26.  As a matter of law, however, it is clear that the Trustee's complaint, which seeks damages for alleged pre-petition breaches of pre-petition contracts between the Debtors and the Saks Defendants is a non-core matter over which the Bankruptcy Court may not exercise final adjudicative authority. See Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50 (1982); see also Orion, 4 F.3d at 1100 (interpreting Marathon to mean that "Congress could not constitutionally empower a non-Article III bankruptcy court with the authority to adjudicate a state breach-of-contract action, based on a pre-petition contract, brought by a debtor against a defendant that had not filed a claim with the bankruptcy court.").

27.  The Trustee's effort to characterize his claims against the Saks Defendants as matters "concerning the administration of the estate" (28 U.S.C. § 157(b)(2)(A)) or "affecting the liquidation of the assets of the estate" (28 U.S.C. § 157(b)(2)(O)) is unfounded.

28.  The Trustee's reading of these catch-all categories, while linguistically possible, would "create[] an exception to *Marathon* that would swallow the rule." Orion, 4 F.3d

at 1102; accord Beard v. Braunstein, 914 F.2d 434, 443 (3d Cir. 1990) ("It is clear that to the extent that the claim is for pre-petition contract damages, it is non-core.").

29. In theory, virtually any claim has the potential to impact the administration of the debtor's estate, or to affect the liquidation of the assets of the estate. Nevertheless, claims are generally classified as non-core if, as in this case, they "involve[] a right created by state law, independent of and antecedent to the reorganization petition that conferred jurisdiction on the bankrupycy court." Interconnect Telephone Services, Inc. v. Farren, 59 B.R. 397, 400 (S.D.N.Y. 1986).

30. The Trustee's suggestion that the Adversary Proceeding is core because it seeks an "order[] to turn over property of the estate" is equally unavailing since "[i]t is settled law that the debtor cannot use the turnover provisions to liquidate contract disputes or otherwise demand assets whose title is in dispute." Hirsch v. London S.S. Owners' Mut. Life Ins. Ass'n Ltd. (In re Seatrain Lines, Inc.), 198 B.R. 45, 50 n. 7 (S.D.N.Y.1996); In re Teligent, Inc., 325 B.R. 134, 137-38 (Bankr. S.D.N.Y. 2005) (same).

31. The Trustee's fraudulent transfer claims may literally qualify as core proceedings under 28 U.S.C. § 157(H), but only if one overlooks the fact that they are thinly-veiled restatements of claims that more properly sound in breach of contract.

32. Regardless, the clear majority of the Trustee's claims in the Adversary Proceeding are demonstrably non-core, and cannot be resolved by the Bankruptcy Court.

33. Accordingly, this Court should withdraw the reference of the Adversary Proceeding in order to avoid the duplication of effort and unwarranted expenditure of judicial and party resources that would result from trying the Adversary Proceeding in the Bankruptcy Court, only to have a *de novo* review of the Bankruptcy Court's conclusions in this Court.

### 2. **The Saks Defendants Are Entitled to a Jury Trial**

34. Even if some of the Trustee's claims could be classified as core, however, there is still ample cause for withdrawal of the reference in this case because the Saks Defendants are entitled to a jury trial in an Article III court.

35. In <u>Granfinanciera, S.A. v. Nordberg</u>, 492 U.S. 33 (1989), the Supreme Court expressly recognized that "a person who has not submitted a claim against a bankruptcy estate has a right to a jury trial when sued by the trustee in bankruptcy to recover an allegedly fraudulent monetary transfer . . . notwithstanding Congress' designation of fraudulent conveyance actions as 'core proceedings' in 28 U.S.C. § 157(b)(2)(H) (1982 ed., Supp. V)." <u>Id.</u> at 36.

36. While the Supreme Court did not address the question of whether a jury trial conducted in the bankruptcy court would satisfy this requirement, Congress has, by statute, provided that a bankruptcy court may only conduct a jury trial "with the express consent of all the parties." 28 U.S.C. § 157(e).

37. Accordingly, this Court should withdraw the reference of the Adversary Proceeding because the Bankruptcy Court is incapable of furnishing the Saks Defendants' with the jury trial to which they are constitutionally and statutorily entitled.

### 3. **Withdrawal of the Reference Would Advance the Interests of Judicial Economy by Allowing a Single Court to Adjudicate Related Issues of Fact and Law Pertaining to the Saks Defendants' Chargeback Practices**

38. The IDC Action and the Adversary Proceeding are not factually or legally identical, and each case will necessarily have to be resolved according to its own particular merits.

39. Nevertheless, since both the IDC Action and the Adversary Proceeding challenge the same chargeback practices employed by the Saks Defendants, including, without

limitation, the Saks Defendants' collection of the 8/10 EOM discount, it would be more efficient – for the parties and the judicial system generally – to have those issues tried before a single judge with a working knowledge of the Saks Defendants' chargeback practices, as well as prevailing customs in the apparel industry. See Mishkin v. Ageloff, 220 B.R. 784, 799 (S.D.N.Y. 1998) (noting the "overlapping and interlocking nature" of three related adversary proceedings and concluding that "it seems to make the most sense to adjudicate these three related cases in one forum before one court.").

40. Coordination of proceedings will also eliminate the possibility of inconsistent judgments regarding the interpretation of the 8/10 EOM term, and any other common issues of law that might arise.

41. Accordingly, this Court should withdraw the reference of the Adversary Proceeding in order to promote the interests of judicial economy, and avoid the possibility of inconsistent results.

4. **The Remaining Orion Factors Also Support Withdrawal of the Reference**

42. Forum shopping is not a concern in this case because the claims asserted against the Saks Defendants are non-core proceedings that "could have and probably should have been brought in a district court originally." McMahaon v. Providence Capitol Enterprises, Inc., 222 B.R. 205, 208 (S.D.N.Y. 1998).

43. Likewise, withdrawal of the reference of the Adversary Proceeding does not have any implications for the uniform administration of bankruptcy law since the claims asserted by the Trustee are premised on state law tort and fraudulent transfer theories, and do not involve any material questions of federal bankruptcy law. Id.

44.  Thus, the remaining <u>Orion</u> factors are minimally relevant to the determination of whether cause exists to withdraw the reference of the Adversary Proceeding, particularly in light of the compelling interests of judicial economy and the statutory inability of the Bankruptcy Court to enter a final judgment resolving the claims asserted in the Adversary Proceeding.

WHEREFORE, the Saks Defendants respectfully request the Court to enter an order withdrawing the reference of the Adversary Proceeding pursuant 28 U.S.C. § 157(d), and granting such other and further relief as this Court deems just and proper.

Dated: New York, New York
      June 4, 2007

Respectfully submitted,

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP

By: _____
    Jeffrey N. Rich (JR7183)
    A Member of the Firm
599 Lexington Avenue
New York, NY 10022
(212) 536-3900 (telephone)
(212) 536-3901 (facsimile)

Attorneys for Defendants, Saks Incorporated, Saks Fifth Avenue, Inc., Carson Pirie Scott, Parisian, Inc., Younkers, Profitt's and McRaes, Inc.