KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
Jeffrey N. Rich (JR7183)
599 Lexington Avenue
New York, New York 10022
Telephone (212) 536-3900

Attorneys for Defendants, Saks Incorporated,
Saks Fifth Avenue, Inc., Carson Pirie Scott,
Parisian, Inc.,Younkers, Profitt's, and McRaes, Inc.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| | : | |
| KLEINERT'S, INC., et al., | : | Case No. 03 B 41140 (BRL) |
| | : | |
| Debtors, | : | Jointly Administered |

-------------------------------------------------------X

| | | |
|---|---|---|
| DAVID R. KITTAY, TRUSTEE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| | : | |
| -against- | : | Adv. Pro. No. 05-3067 (BRL) |
| | : | |
| SAKS INCORPORATED, SAKS FIFTH | : | |
| AVENUE, INC., CARSON PIRIE | : | |
| SCOTT, PARISIAN, INC. YOUNKERS, | : | |
| PROFITT'S and MCRAES, INC., | : | |
| | : | |
| Defendants. | : | |

-------------------------------------------------------X

**AFFIDAVIT OF JEFFREY N. RICH IN SUPPORT OF DEFENDANTS' MOTION FOR
WITHDRAWAL OF THE REFERENCE PURSUANT TO 28 U.S.C. § 157(D)**

STATE OF NEW YORK     )
                      ) ss:
COUNTY OF NEW YORK    )

       JEFFREY N. RICH, having been duly sworn according to law, deposes and states:

       1.      I am a member of the bar of this Court and a partner in the law firm of Kirkpatrick

& Lockhart Preston Gates Ellis LLP, which serves as counsel to Defendants Saks Incorporated,

Saks Fifth Avenue, Inc., Carson Pirie Scott, Parisian, Inc., Younkers, Profitt's, and McRaes, Inc. (the "Defendants") in this case.  As a result of my work on behalf of the Defendants, I am personally familiar with the facts set forth in this affidavit.

    2.    Annexed hereto as Exhibit A is a copy of the First Amended Complaint that was filed by Plaintiff, David R. Kittay, on October 10, 2006 at Docket No. 12.

    3.    Annexed hereto as Exhibit B is a copy of the Answer and Affirmative Defenses to Trustee's First Amended Complaint that was filed by the Defendants on February 20, 2007 at Docket No. 26.

    4.    Annexed hereto as Exhibit C is a copy of the original Complaint filed by Plaintiff, David R. Kittay, on October 25, 2005 at Docket No. 1.

Jeffrey N. Rich

Sworn and subscribed to before me
on this ___ day of June, 2007:

Notary Public

NATHANAEL F. MEYERS
Notary Public, State of New York
No. 01ME5057476
Qualified in New York County
Commission Expires March 25, ~~1995~~ 2010

- 2 -

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| | : | |
| KLEINERT`S, INC., et. al., | : | Case Nos. 03 B 41140 (BRL) |
| | : | through Case No. 03 B 41144 |
| | : | (BRL) |
| | : | |
| Debtors. | : | Jointly Administered |

------------------------------------------------------------------x

: 

DAVID R. KITTAY, as TRUSTEE,     :     Adv. Pro. No. 05-3067 (BRL)
and as ASSIGNEE of WACHOVIA BANK,  :
NATIONAL ASSOCIATION, NATIONAL      :
CITY BANK and SUMMITBRIDGE          :
NATIONAL INVESTMENTS, LLC as assignee of  :
FLEET NATIONAL BANK,              :

                                  :

                Plaintiff,        :

                                  :     **FIRST AMENDED**
        - against -               :     **COMPLAINT**

                                  :

SAKS INCORPORATED,                :
SAKS FIFTH AVENUE, INC.,          :
CARSON PIRIE SCOTT,               :
PARISIAN, INC.,                   :
YOUNKERS,                         :
PROFITT'S and                     :
MCRAES, INC.,                     :

                                  :

                Defendants.       :

------------------------------------------------------------------x

David R. Kittay (the "Trustee" or "Plaintiff"), as Chapter 7 Trustee of Kleinert's, Inc.[1] and its

wholly-owned subsidiaries (collectively, "Kleinert's" or the "Debtor"), by his attorneys Kittay &

_____

[1]  These jointly administered bankruptcy estates are comprised of Kleinert's, Inc.; Kleinert's,
Inc. of New York; Kleinert's, Inc. of Alabama; Kleinert's Retail, Inc. and Kleinert's, Inc. of Delaware.

Gershfeld, P.C., for his first amended complaint against Saks Incorporated, Saks Fifth Avenue, Inc., Carson Pirie Scott, Parisian, Inc., Younkers, Profitt's and McRaes, Inc. (collectively, "Defendants" or "Saks"), alleges as follows:

## INTRODUCTION

1.    In the clothing industry, chargebacks represent amounts a purchaser deducts from accounts payable due to a vendor when shipments fail to conform to specifications set out in a purchaser's purchase orders.  In the years preceding the Debtor's filing for Bankruptcy Court protection, retailers such as Wal-Mart, Kids "R" Us, JC Penney Co. and Sears assessed chargebacks against the Debtor averaging approximately two percent.   The percentage chargeback assessed by Saks and its related entities during this same period averaged fourteen percent.  This twelve percent difference was not a result of inferior goods being manufactured for and shipped to Saks; rather, it reflects Saks' requirement that it be allowed to order goods at an illusory inflated price via Saks' electronic data interchange transmissions.  These fraudulent transmissions were the basis for a scheme by which the Debtor's bank lenders and other creditors were defrauded.

2.    Specifically, Saks required the Debtor to bill Saks for the full purchase price of the goods, all the while knowing it would be paying much less.  This scheme substantially assisted certain of the Debtor's officers and directors in perpetrating a fraud on the Debtor's lenders and creditors in excess of $100 million.

3.    Saks is currently the subject of Securities and Exchange Commission and United States Attorney investigations, and several civil suits, regarding its chargeback practices.

## JURISDICTION AND VENUE

4.      On May 7, 2003, Kleinert's and its wholly-owned subsidiaries filed separate voluntary petitions for relief under Chapter 11, Title 11 of the United States Code (the "Bankruptcy Code") in the Southern District of New York.  The cases were subsequently consolidated for administrative purposes.

5.      On or about August 14, 2003, the voluntary Chapter 11 cases were converted to cases under Chapter 7 of the Bankruptcy Code and David R. Kittay was appointed Chapter 7 Trustee of Kleinert's respective estates.

6.      This Court has jurisdiction over this matter pursuant to Sections 157 and 1334 of Title 28 of the United States Code ("Title 28").

7.      Venue of the Chapter 7 case and this matter in this District is proper pursuant to Sections 1408 and 1409 of Title 28, respectively.

8.      This action is a core proceeding pursuant to Sections 157 (b)(2)(A), (E), (H) and (O) of Title 28.

## THE PARTIES

9.      By Order of the Court dated August 14, 2003, Plaintiff David R. Kittay, Esq. was appointed as the interim Chapter 7 Trustee pursuant to Section 701 of the Bankruptcy Code and subsequently qualified as Trustee pursuant to Bankruptcy Code Section 702(d).  He maintains his principal place of business at 100 White Plains Road, Tarrytown, New York 10591.

10.     The Trustee also received an assignment of claims belonging to Wachovia Bank, National Association ("Wachovia"), National City Bank ("National City"), and Summitbridge National Investments, LLC ("Summitbridge") as assignee of Fleet National Bank (Wachovia, National

3

City and Summitbridge are collectively referred to herein as the "Lenders").

      11.    Kleinert's, Inc. is a Pennsylvania corporation and is a holding company that owns, directly or indirectly, 100% of the issued and outstanding common stock of (a) Kleinert's, Inc. of New York, a New York corporation overseeing marketing, sales, design and sourcing of the Kleinert's line and the Buster Brown line of clothing; (b) Kleinert's, Inc. of Alabama, an Alabama corporation responsible for the distribution of merchandise; (c) Kleinert's Retail, Inc., an Alabama corporation that owned and operated various Buster Brown retail stores; and (d) Kleinert's, Inc. of Delaware, a Delaware corporation that owned the intellectual property licensed to the affiliated companies.

      12.    Defendant Saks Incorporated is a Tennessee corporation. Saks Incorporated operates two business segments, Saks Fifth Avenue Enterprises ("SFAE") and Saks Department Store Group ("SDSG"). The Defendants' flagship Saks Fifth Avenue store is located on Fifth Avenue, in the heart of Manhattan.

      13.    SFAE consists of approximately 57 Saks Fifth Avenue stores, approximately 52 Saks Off 5th stores and the internet retail site "www.saks.com".

      14.    During the period at issue, SDSG consisted of the Parisian, Profitt's, McRae's, Younkers and Carson Pirie Scott department stores which it operated throughout the country.

## THE ASSIGNMENT

      15.    The Trustee is legally empowered to sue for damages to the Debtor resulting from Defendants' fraud, dishonesty, aiding and abetting certain of the Debtor's officers' and directors' breach of fiduciary duty, tortious behavior and its receipt of fraudulent conveyances.

4

16.     As set forth above, the Trustee is also the assignee of the Lenders. The Assignment was executed on December 8, 2003, and provided that all claims "in connection with the Loans and related matters and against any insurance policies related thereto" were transferred and assigned to the Trustee. The Lenders advanced substantial loans to Kleinert's based on false and misleading financial data created by Saks and then supplied to the Lenders by certain of the Debtor's officers and directors. The Trustee, as assignee of their claims, has standing to assert claims and seek to recover for the injury in fact suffered by the Lenders.

## FACTS

17.     During the year prior to the bankruptcy filing, the Debtor obtained financing principally through an Amended and Restated Loan Agreement, dated as of May 31, 2002 (the "2002 Loan Agreement") with Kleinert's Alabama, Kleinert's Retail and Kleinert's Delaware, as Borrowers (the "Borrowers"). The Borrowers' obligations under the 2002 Loan Agreement were guaranteed by Kleinert's and its wholly-owned subsidiary in Honduras, Certified Apparel Services of Honduras, Inc. ("Honduras"; collectively, the "Guarantors"), and were secured by liens on substantially all of the assets of the Borrowers and the Guarantors. Wachovia served as administrative agent for the Lenders "Pre-Petition Agent" under the 2002 Loan Agreement.

18.     A previous loan agreement had been entered into as of June 8, 2000 (the "2000 Loan Agreement") among Kleinert's Alabama, Kleinert's Delaware and Kleinert's Inc., as Guarantor, and First Union National Bank ("First Union"), individually as lender and agent, HSBC Bank USA ("HSBC") and National City, individually as a lender and as a syndication agent. The 2000 Loan Agreement established a $68 million credit facility, with a promissory note of $38 million in favor

5

of First Union, a $10 million promissory note in favor of HSBC and a $20 million promissory note in favor of National City. (Fleet subsequently took HSBC's place under the 2000 Loan Agreement, and, in turn, assigned its rights to Summitbridge after the 2002 Loan Agreement.) First Union subsequently became Wachovia.

19.    In April 2001, the Lenders and the Debtor amended the 2000 Loan Agreement by reducing the credit facility to $64 million effective December 14, 2001 and modifying certain financial covenants. Wachovia agreed to provide $2 million in the form of an unsecured working capital loan that was available from June 1, 2001 through November 15, 2001. The amended agreement required certain shareholders to provide the Debtor with unsecured working capital loans, and those loans totaled $6.2 million. From May to July 2001, the Debtor issued $6.2 million of nine percent (9%) subordinated demand notes payable to shareholders due December 21, 2001. On or around December 1, 2001, the Debtor was in default of certain financial covenants. In December 2001, in consideration for the agreement that $1,900,000 of the shareholder loans would remain in the Debtor, the banks agreed to waive the financial covenant defaults, and the remaining $4,300,000 in shareholder loans were repaid ("2001 Loan Agreement").

20.    Pursuant to the 2002 Loan Agreement, the Debtor's pre-petition secured lenders agreed, inter alia, to restructure the existing $68 million credit facility previously extended by certain of the Lenders into a revolving credit facility in an aggregate amount of up to $25 million and a term loan in an aggregate principal amount of $33 million on the terms and conditions set forth therein. Under the revolving credit facility, to the extent loans were repaid, new loans were advanced subject to defined borrowing base limitations specified in the 2002 Loan Agreement. The 2002 Loan Agreement,

6

as well as preceding loan agreements, required transmittal by the Debtor to the Lenders of borrowing base certificates or reports in which the Debtor certified certain financial information and compliance with the borrowing base limitations.

21.     The Debtor experienced lower than projected sales in 2001 and 2002.

22.     Beginning with at least the fiscal year ended November 30, 2001, several of the Debtor's officers and directors[2], materially overstated revenues and understated expenses of the Debtor through a number of accounting irregularities designed to induce the Lenders to extend certain loans scheduled to terminate in June 2002, and to enable Kleinert's to meet specific loan covenants, thereby permitting the repayment of certain subordinated shareholder debt that otherwise could not have been repaid under the 2000 and 2002 Loan Agreements.   Even after the Debtor procured $58 million in financing under the 2002 Loan Agreement, several of the Debtor's directors and officers, among other things, falsified at least seven borrowing base certificates submitted to the Lenders between December 9, 2002 and January 27, 2003 permitting further drawdowns under the loan facilities.

23.     Although aware that the Debtor never received the full invoiced amount from Saks, certain of the Debtor's officers and directors utilized the overstated accounts receivable amounts in preparing the Debtor's reports to its Lenders.

24.     By November 2002, chargebacks were included in the accounts receivable of

---

[2]     Joseph Connors, Kleinert's former Chief Financial Officer, who has been indicted by the Office of the United States Attorney in the Eastern District of Pennsylvania for bank fraud in connection with his actions at Kleinert's, invoked his Fifth Amendment privilege against self-incrimination during his deposition in related proceedings in this bankruptcy case.

7

the Debtor's books in an amount exceeding $4 million.

## AS AND FOR A FIRST CLAIM FOR RELIEF
## (CONVERSION)
### On Behalf of the Trustee and the Lenders

25.    Plaintiff repeats and incorporates by reference the allegations of the preceding paragraphs as if fully set forth herein.

26.    From no later than March 30, 1998, through August 14, 2003, Defendants charged back at least $4,035,754.90 (the "Chargebacks") to Kleinert's.

27.    Defendants applied improper chargebacks to the accounts payable to Kleinert's, thereby depriving Kleinert's of monies due to Kleinert's.

28.    Defendants assessed the improper and invalid chargebacks against Kleinert's without justification.

29.    The improperly assessed chargebacks constitute estate assets.

30.    By assessing improper and invalid chargebacks against Kleinert's, Defendants exercised wrongful control over Kleinert's property.

31.    Prior to filing for bankruptcy, Kleinert's sought the return of the improper Chargebacks from Defendants.

32.    After his appointment as Chapter 7 Trustee, Plaintiff sought the return of the improper Chargebacks from Defendants.

33.    Defendants failed and refused to return the improper Chargebacks to Kleinert's

8

and/or Plaintiff.

34.     Defendants converted the Debtor's accounts receivable by assessing improper and invalid chargebacks against the Debtor, thereby causing the Debtor extreme financial distress that contributed to Kleinert's eventual bankruptcy.

35.     As a result, Kleinert's incurred liabilities and lost profits of at least $100,000,000.

36.     Such losses were clearly foreseeable by Defendants.

37.     By reason of the above, the Trustee, on behalf of the Estate and its creditors and as assignee of the Lenders, is entitled to an award of compensatory damages in an amount to be determined at trial but believed to be not less than $100,000,000 together with reasonable attorneys' fees and punitive damages of no less than $50 million.

### AS AND FOR A SECOND CLAIM FOR RELIEF
### (UNJUST ENRICHMENT)
### On Behalf of the Trustee and the Lenders

38.     Plaintiff repeats and incorporates by reference the allegations of the preceding paragraphs as if fully set forth herein.

39.     From no later than March 30, 1998, through August 14, 2003, Defendants charged back an amount not less than $4,035,754.90 to Kleinert's.

40.     These Chargebacks improperly benefitted Defendants because they constituted funds that Defendants improperly retained instead of paying Kleinert's.

41.     Defendants represented to Kleinert's that these Chargebacks were valid and proper.

9

42.    Defendants knew the Chargebacks were invalid and improper.

43.    It is inequitable for Defendants to keep the funds not turned over as alleged Chargebacks because the funds constitute money validly due and owing to Kleinert's.

44.    By virtue of the foregoing, Defendants are liable to reimburse Kleinert's estate the amount of the improper and invalid Chargebacks.

45.    Such losses were clearly foreseeable by Defendants.

46.    By reason of the above, the Trustee, on behalf of the Estate and its creditors and as assignee of the Lenders, is entitled to an award of damages in an amount to be determined at trial but believed to be not less than $4,035,754.90.

## AS AND FOR A THIRD CLAIM FOR RELIEF
### (FRAUD)
### On Behalf of the Trustee

47.    Plaintiff repeats and incorporates by reference the allegations of the preceding paragraphs as if fully set forth herein.

48.    From no later than March 30, 1998, through August 14, 2003, Defendants charged back at least $4,035,754.90 to Kleinert's.

49.    Defendants represented to Kleinert's that these Chargebacks were valid and proper even though such representation was materially false.

50.    Defendants knew that many, if not all, of these Chargebacks were invalid and improper and were granted to Defendants for no consideration.

51.    Kleinert's relied on Defendants' representations that these Chargebacks were valid and proper.

10

52.    Defendants represented that the improper Chargebacks were valid for the purpose of inducing Kleinert's not to pursue the entire amount of the accounts payable to Kleinert's from Defendants.

53.    In reliance on Defendants' false representations that the Chargebacks were valid and proper, Kleinert's did not seek payment for all of the amounts improperly charged back by Defendants.

54.    Kleinert's reliance on Defendants' representation that the improper Chargebacks were valid caused Kleinert's to lose not less than $4,035,754.90 owed by Defendants.

55.    This loss caused Kleinert's to experience extreme financial distress and to file for bankruptcy.

56.    As a result, Kleinert's incurred liabilities and lost profits of at least $100,000,000.

57.    Such losses were foreseeable by Defendants.

58.    By reason of the above, the Trustee, on behalf of the Estate and its creditors, is entitled to an award of compensatory damages in an amount to be determined at trial but believed to be not less than $100,000,000 together with reasonable attorneys' fees and punitive damages of no less than $50 million.

## AS AND FOR A FOURTH CLAIM FOR RELIEF
### (FRAUD)
### On Behalf of the Lenders

59.    Plaintiff repeats and incorporates by reference the allegations of the preceding paragraphs as if fully set forth herein.

11

60.    From no later than March 30, 1998, through August 14, 2003, Defendants charged back Chargebacks of at least $4,035,754.90 to Kleinert's.

61.    Defendants knew that many, if not all, of these Chargeback were invalid and improper and were granted to Defendants for no consideration.

62.    These unwarranted "chargebacks" substantially assisted certain of the Debtor's officers and directors in booking fictitious sales revenue and accounts receivable and perpetrating a fraud on the Debtor's Lenders in excess of $25 million.  The Debtor's Lenders justifiably relied on these misrepresentations.

63.    The Defendants' conduct was reckless and resulted in injury to the Debtor's Lenders.

64.    This loss caused Kleinert's to experience extreme financial distress and to file for bankruptcy.

65.    As a result, the Lenders' experienced losses of at least $25 million.

66.    Such losses were foreseeable by Defendants.

67.    By reason of the above, the Trustee, as assignee of the Lenders, is entitled to an award of compensatory damages in an amount to be determined at trial but believed to be not less than $25 million together with reasonable attorneys' fees and punitive damages of no less than $50 million.

**AS AND FOR A FIFTH CLAIM FOR RELIEF**
**(TORTIOUS INTERFERENCE WITH**
**PROSPECTIVE ECONOMIC ADVANTAGE)**
**On Behalf of the Trustee and the Lenders**

12

68.     Plaintiff repeats and incorporates by reference the allegations of the preceding paragraphs as if fully set forth herein.

69.     The Debtor and the Lenders had an ongoing business relationship.

70.     The Defendants used dishonest, improper or unfair means in conducting business with the Debtor.

71.     Saks interfered with the Lenders' relationship with the Debtor.

72.     The Debtor and the Lenders were injured as a result of the Defendants' actions.

73.     Such losses were clearly foreseeable by Defendants.

74.     By reason of the above, the Trustee, on behalf of the Estate, its creditors and as assignee of the Lenders, is entitled to an award of compensatory damages in an amount to be determined at trial but believed to be not less than $100,000,000.

### AS AND FOR A SIXTH CLAIM FOR RELIEF
### (AIDING AND ABETTING BREACH OF FIDUCIARY DUTY)
### On Behalf of the Trustee and the Lenders

75.     Plaintiff repeats and incorporates by reference the allegations of the preceding paragraphs as if fully set forth herein.

76.     Connors and others of the Debtor's fiduciaries breached their fiduciary duties to the Debtor and to the creditors by falsifying borrowing base certificates given to the Lenders. Defendants knew their improper chargeback scheme was assisting breaches of fiduciary duties.

77.     Defendants substantially assisted Connors and others in effecting the breach.

78.     As a direct and proximate cause of the foregoing conduct by Defendants, the

13

Debtor, its creditors and the Lenders were damaged.

79.    By reason of the above, the Trustee, on behalf of the Estate and its creditors and as assignee of the Lenders, is entitled to an award of compensatory damages in an amount to be determined at trial but believed to be not less than $100,000,000 together with reasonable attorneys' fees and punitive damages of no less than $50 million.

### AS AND FOR A SEVENTH CLAIM FOR RELIEF
### (AIDING AND ABETTING FRAUD)
### On Behalf of the Trustee and Lenders

80.    Plaintiff repeats and incorporates by reference the allegations of the preceding paragraphs as if fully set forth herein.

81.    Connors and others perpetrated a fraud on the Lenders and others.

82.    Defendants knew their improper chargeback scheme was assisting the perpetration of fraud.

83.    Defendants substantially assisted Connors and others in perpetrating the fraud.

84.    As a direct and proximate cause of the foregoing conduct by the Defendants, the Debtor, its creditors and the Lenders were damaged.

85.    By reason of the above, the Trustee, on behalf of the Estate and its creditors and as assignee of the Lenders, is entitled to an award of compensatory damages in an amount to be determined at trial but believed to be not less than $100,000.000 together with reasonable attorneys' fees and punitive damages of no less than $50 million.

### AS AND FOR AN EIGTH CLAIM FOR RELIEF
### (FRAUDULENT CONVEYANCE PURSUANT TO STATE LAW)

14

**On Behalf of the Trustee and the Lenders**

86.    Plaintiff repeats and incorporates by reference the allegations of the preceding paragraphs as if fully set forth herein.

87.    The Chargebacks were made with the actual intent to hinder, delay or defraud the Lenders.

88.    By reason of the foregoing, the Chargebacks should be avoided and the Trustee, on behalf of the Estate and its creditors and as assignee of the Lenders, is entitled to recover the value of such transfers from Defendants in an amount to be determined at trial, which is not less than $4,035,754.90, plus interest.

### AS AND FOR A NINTH CLAIM FOR RELIEF
### (FRAUDULENT CONVEYANCE PURSUANT TO STATE LAW)
**On Behalf of the Trustee and Lenders**

89.    Plaintiff repeats and incorporates by reference the allegations of the preceding paragraphs as if fully set forth herein.

90.    The Chargebacks, in an amount not less than $4,035,754.90, were made while the Debtor intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

91.    The Chargebacks were made by the Debtor without receiving a reasonably equivalent value in exchange for the Chargebacks.

92.    The Trustee is asserting the rights of the Lenders whose claims arose both before and after the Chargebacks were taken by the Defendants.

93.    By reason of the foregoing, the Chargebacks should be avoided and the

15

Trustee, on behalf of the Estate and its creditors and as assignee of the Lenders, is entitled to set aside and recover the value of such transfers in an amount to be determined at trial, which is not less than $4,035,754.90, plus interest.

### AS AND FOR A TENTH CLAIM FOR RELIEF
### (FRAUDULENT CONVEYANCE PURSUANT TO STATE LAW)
### On Behalf of the Trustee and Lenders

94.     Plaintiff repeats and incorporates by reference the allegations of the preceding paragraphs as if fully set forth herein.

95.     The Chargebacks in an amount not less than $4,035,754.90 were made for less than a reasonably equivalent value and the Debtor was insolvent or became insolvent because of the Chargebacks.

96.     By reason of the foregoing, the Chargebacks should be avoided and the Trustee, on behalf of the Estate and its creditors and as assignee of the Lenders, is entitled to set aside and recover the value of such transfers in an amount to be determined at trial, which is not less than $4,035,754.90, plus interest.

### AS AND FOR AN ELEVENTH CLAIM FOR RELIEF
### (FRAUDULENT CONVEYANCE PURSUANT TO STATE LAW)
### On Behalf of the Trustee and Lenders

97.     Plaintiff repeats and incorporates by reference the allegations of the preceding paragraphs as if fully set forth herein.

98.     The Chargebacks in an amount not less than $4,035,754.90 were made while the Debtor was insolvent or caused the Debtor to become insolvent.

99.     The Chargebacks were made without fair consideration and constitute

fraudulent conveyances as to creditors.

100.    The Trustee, on behalf of the Estate and its creditors and as assignee of the Lenders, is entitled to set aside and recover the value of such transfers in an amount to be determined at trial, which is not less than $4,035,754.90, plus interest.

**AS AND FOR A TWELFTH CLAIM FOR RELIEF**
**(FRAUDULENT CONVEYANCE PURSUANT TO STATE LAW)**
**<u>On Behalf of the Trustee and Lenders</u>**

101.    Plaintiff repeats and incorporates by reference the allegations of the preceding paragraphs as if fully set forth herein.

102.    The Chargebacks were made on dates when the Debtor was insolvent or as a result had become insolvent.

103.    The Chargebacks constitute interests of the Debtor in property.

104.    The Chargebacks were made while the Debtor was engaged in a business for which the property remaining in its hands after the transfers was unreasonably small capital.

105.    The transfers were made without fair consideration and constitute fraudulent conveyances as to the Lenders and other creditors at that time and as to other persons who became creditors during the continuance of the business.

106.    The Trustee, on behalf of the Estate and its creditors and as assignee of the Lenders, is entitled to recover the value of such transfers from Defendants in an amount to be determined at trial which is not less than $4,035,754.90, plus interest.

**AS AND FOR A THIRTEENTH CLAIM FOR RELIEF**
**(FRAUDULENT CONVEYANCE PURSUANT TO STATE LAW**
**<u>On Behalf of the Trustee and Lenders</u>**

17

107.    Plaintiff repeats and incorporates by reference the allegations of the preceding paragraphs as if fully set forth herein.

108.    The Chargebacks in an amount not less than $4,035,754.90 were not made for reasonably equivalent value and each of the transfers was made while the Debtor was engaged in a business for which its remaining assets were unreasonably small.

109.    The Trustee is asserting the rights of the Lenders and unsecured creditors whose unsecured claims date back to the date of the initial fraudulent conveyance. The Trustee is also asserting the rights of open trade account creditors who extended credit to the Debtor at the time of the fraudulent conveyances and who continued to do so until the time of the bankruptcy.

110.    The Trustee, on behalf of the Estate and its creditors and as assignee of the Lenders, is entitled to recover the value of such transfers from Defendants in an amount to be determined at trial which is not less than $4,035,754.90, plus interest.

### AS AND FOR A FOURTEENTH CLAIM FOR RELIEF
### (TURNOVER PURSUANT TO 11 U.S.C. §542)
### On Behalf of the Trustee

111.    Plaintiff repeats and incorporates by reference the allegations of the preceding paragraphs as if fully set forth herein.

112.    As a result of the sale of valuable merchandise by Kleinert's to Defendants, Kleinert's booked accounts receivable at the full purchase price that were due from Defendants.

113.    Defendants assessed improper and invalid Chargebacks against the accounts payable to Kleinert's.

114.    Since the Chargebacks assessed by Defendants against Kleinert's were

18

improper and invalid, Defendants remain in possession and control of Kleinert's property.

115.    Kleinert's property, which is currently held by Defendants, constitutes an asset of Kleinert's bankruptcy estate that has benefit and value to Kleinert's bankruptcy estate.

116.    Based on the foregoing, the Court should compel Defendants to turn over all of Kleinert's property to Plaintiff, including, without limitation, the money retained by Defendants from accounts payable due to Kleinert's as improper and invalid Chargebacks.

## AS AND FOR A FIFTEENTH CLAIM FOR RELIEF
## (ACCOUNTING)
## On Behalf of the Trustee and the Lenders

117.    Plaintiff repeats and incorporates by reference the allegations of the preceding paragraphs as if fully set forth herein.

118.    Defendants have profited from the assessment of improper and invalid Chargebacks against Kleinert's for which no consideration was given to Kleinert's.

119.    By reason of the foregoing, Plaintiff on behalf of the Estate, its creditors and the Lenders is entitled to an accounting of all of the Chargebacks assessed against Kleinert's by Defendants from no later than March 30, 1998 through the present and an accounting of the reasons for which each chargeback was assessed.

WHEREFORE,  Plaintiff respectfully requests entry of judgment against Defendants:  (a) awarding damages to the Trustee, in an amount to be determined at trial but not less than $100,000,000, plus interest and reasonable attorneys' fees, related to the Plaintiff's First, Third, Fifth, Sixth and Seventh Claims for Relief, (b) awarding damages to the Trustee, in an amount to be determined at trial but not

19

less than $4,035,754.90, plus interest and reasonable attorneys' fees, related to the Plaintiff's Second,

Eighth, Ninth, Tenth, Eleventh, Twelfth and Thirteenth Claims for Relief, (c) directing the Defendants to

turn over to the Trustee the monies wrongly retained by the Defendants from accounts payable to the

Debtor as improper and invalid Chargebacks, (d) directing an accounting of all of the Chargebacks

assessed against the Debtor by the Defendants from no later than March 30, 1998 through and

including the present and an accounting for the reasons for which each chargeback was assessed, (e)

awarding damages to the Trustee, in an amount to be determined at trial but not less than $35,000,000,

plus interest and reasonable attorneys' fees, related to the Plaintiff's Fourth Claim for Relief, (f)

awarding punitive damages to the Trustee against Defendants in an amount to be determined at trial

with respect to

the Trustee's First, Third, Fourth, Sixth and Seventh Claims for Relief; and (g) granting the

Trustee such other relief as is just and proper.

Dated:  Tarrytown, New York
         August 15, 2006

KITTAY & GERSHFELD, P.C.
Attorneys for Chapter 7 Trustee

By:    /s/ David R. Kittay
David R. Kittay (DK-0481)
100 White Plains Road, 2nd Floor
Tarrytown, New York 10591
(914) 332-8000

# EXHIBIT B

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
Jeffrey N. Rich (JR7183)
599 Lexington Avenue
New York, New York 10022
Telephone (212) 536-3900

Attorneys for Defendants, Saks Incorporated,
Saks Fifth Avenue, Inc., Carson Pirie Scott,
Parisian, Inc.,Younkers, Profitt's, and McRaes, Inc.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| KLEINERT'S, INC., et al., | : | Case No. 03 B 41140 (BRL) |
| | : | |
| Debtors, | : | Jointly Administered |

------------------------------------------------------X

| | | |
|---|---|---|
| DAVID R. KITTAY, TRUSTEE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| | : | |
| -against- | : | Adv. Pro. No. 05-3067 (BRL) |
| | : | |
| SAKS INCORPORATED, SAKS FIFTH | : | |
| AVENUE, INC., CARSON PIRIE | : | **JURY TRIAL DEMANDED** |
| SCOTT, PARISIAN, INC. YOUNKERS, | : | |
| PROFITT'S and MCRAES, INC., | : | |
| | : | |
| Defendants. | : | |

------------------------------------------------------X

## DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES
## TO TRUSTEE'S FIRST AMENDED COMPLAINT

Defendants Saks Incorporated, Saks Fifth Avenue, Inc., Carson Pirie Scott, Parisian, Inc.,

Younkers, Profitt's, and McRaes, Inc. (collectively, the "Defendants") hereby respond to the

First Amended Complaint (the "Complaint") filed by David R. Kittay (the "Trustee"), the

chapter 7 trustee of the jointly-administered bankruptcy estates of Kleinert's, Inc., Kleinert's,

NY-507669 v1

Inc. of New York, Kleinert's, Inc. of Alabama, Kleinert's Retail, Inc., and Kleinert's, Inc. of Delaware (collectively, the "Debtors"), stating as follows:

## INTRODUCTION

1.      The allegations set forth in paragraph 1 of the Complaint are admitted in part and denied in part.  The Defendants lack knowledge or information sufficient to form a belief regarding the veracity of the allegations set forth in paragraph 1 to the extent they pertain to the terms of the Debtors' relationships with persons or entities other than the Defendants, and said allegations are therefore denied.  The Defendants admit that the assessment of chargebacks is a universally recognized practice in the clothing industry, and that those of the Defendants that actually purchased goods from the Debtors assessed chargebacks against the Debtors in accordance with the terms of their contracts with the Debtors.  The Defendants deny that they required the Debtor to issue invoices "at an illusory inflated price," and further deny that they participated in a scheme to defraud the Debtors' lenders or other creditors.  The remaining allegations of paragraph 1 are also denied.

2.      The allegations set forth in paragraph 2 are denied.

3.      The allegations set forth in paragraph 3 are denied as stated.  The Defendants admit that there have been several internal and external investigations relating to the improper collection of markdown allowances by a few employees in one merchandising division of Saks Fifth Avenue Enterprises ("SFAE").  The Defendants further acknowledge that they have been subject to one or more civil lawsuits relating to chargeback issues.  By way of further response, the Defendants note that none of the Debtors ever sold any goods to SFAE, or had chargebacks or markdown allowances assessed against them by SFAE.

- 2 -

## JURISDICTION AND VENUE

4.      The allegations set forth in paragraph 4 of the Complaint are admitted upon information and belief.

5.      The allegations set forth in paragraph 5 of the Complaint are admitted upon information and belief.

6.      The allegations set forth in paragraph 6 of the Complaint constitute legal conclusions to which no response is required.  To the extent a response is deemed to be required, however, said allegations are admitted in part and denied in part.  The Defendants deny that this Court has subject matter jurisdiction over the Trustee's First, Second, Third, Fourth, Fifth, Sixth, Seventh and Eighth Claims for Relief because the Trustee lacks standing to assert those claims. The Defendants admit that the Court has subject matter jurisdiction over the remainder of the Complaint.

7.      The allegations set forth in paragraph 7 of the Complaint constitute legal conclusions to which no response is required.  To the extent a response is deemed to be required, however, said allegations are admitted in part and denied in part.  The Defendants admit that venue for the Debtors bankruptcy case is proper in this judicial district, but deny that venue for this adversary proceeding is proper in this judicial district.

8.      In response to the allegations set forth in paragraph 8 of the Complaint, the Defendants deny that the claims asserted by the Trustee in this adversary proceeding are core proceedings within the meaning of 28 U.S.C. § 157, and do not consent to the entry of a final order by this Court.  By way of further response, the Defendants demand a trial by jury of all claims so triable, and do not consent to have said jury trial held in this Court.

## THE PARTIES

9.     The allegations set forth in paragraph 9 of the Complaint are admitted upon information and belief.

10.     The Defendants lack knowledge or information sufficient to form a belief regarding the veracity of the allegations set forth in paragraph 10 of the Complaint, and said allegations are therefore denied.

11.     The Defendants lack knowledge or information sufficient to form a belief regarding the veracity of the allegations set forth in paragraph 11 of the Complaint, and said allegations are therefore denied.

12.     The allegations set forth in paragraph 12 of the Complaint are admitted in part and denied in part.  The Defendants admit that Saks Incorporated ("Saks") is a Tennessee corporation, and that one of Saks' subsidiaries operates a flagship Saks Fifth Avenue store in New York City.  The Defendants deny that Saks presently operates a formal department store group.

13.     In response to the allegations set forth in paragraph 13 of the Complaint, the Defendants admit that SFAE operates approximately 54 Saks Fifth Avenue stores and approximately 50 Off Fifth stores, as well as maintaining the internet website www.saks.com.

14.     In response to the allegations set forth in paragraph 14 of the Complaint, the Defendants admit that Saks and its subsidiaries have, at various points in time, owned and operated stores using the names Parisian, Profitt's, McRae's, Younkers and Carson Pirie Scott.  However, the Complaint fails to define the term "period at issue," and the Defendants must therefore deny the allegations set forth in paragraph 14 to the extent they imply that Saks owned a particular store or group of stores at any particular time.

- 4 -

## THE ASSIGNMENT

15.    The allegations set forth in paragraph 15 of the Complaint constitute legal conclusions to which no response is required.  To the extent a response is deemed to be required, however, said allegations are denied.

16.    The Defendants lack knowledge or information sufficient to form a belief regarding the veracity of the allegations set forth in paragraph 16 of the Complaint, and said allegations are therefore denied.

## FACTS

17.    The Defendants lack knowledge or information sufficient to form a belief regarding the veracity of the allegations set forth in paragraph 17 of the Complaint, and said allegations are therefore denied.

18.    The Defendants lack knowledge or information sufficient to form a belief regarding the veracity of the allegations set forth in paragraph 18 of the Complaint, and said allegations are therefore denied.

19.    The Defendants lack knowledge or information sufficient to form a belief regarding the veracity of the allegations set forth in paragraph 19 of the Complaint, and said allegations are therefore denied.

20.    The Defendants lack knowledge or information sufficient to form a belief regarding the veracity of the allegations set forth in paragraph 20 of the Complaint, and said allegations are therefore denied.

21.    The Defendants lack knowledge or information sufficient to form a belief regarding the veracity of the allegations set forth in paragraph 21 of the Complaint, and said allegations are therefore denied.

- 5 -

22.     The Defendants lack knowledge or information sufficient to form a belief regarding the veracity of the allegations set forth in paragraph 22 of the Complaint, and said allegations are therefore denied.

23.     The Defendants lack knowledge or information sufficient to form a belief regarding the veracity of the allegations set forth in paragraph 23 of the Complaint, and said allegations are therefore denied.

24.     The Defendants lack knowledge or information sufficient to form a belief regarding the veracity of the allegations set forth in paragraph 24 of the Complaint, and said allegations are therefore denied.

### TRUSTEE'S FIRST CLAIM FOR RELIEF

25.     The Defendants hereby incorporate by reference their responses to paragraphs 1 through 24 of the Complaint as if fully set forth herein.

26.     The allegations set forth in paragraph 26 of the Complaint are denied as stated.  Defendants admit that, on an aggregate basis, they assessed no less than $4,035,754.90 in chargebacks, vendor allowances, and other discounts against the Debtors during the period from March 30, 1998 to August 14, 2003.  The Defendants deny the implication, however, that they bear collective responsibility for each other's actions, and note that certain of the Defendants, including Saks and SFAE, did not purchase *any* goods from, or assess *any* chargebacks against, the Debtors.

27.     The allegations set forth in paragraph 27 of the Complaint are denied.

28.     The allegations set forth in paragraph 28 of the Complaint are denied.

29.     The allegations set forth in paragraph 29 of the Complaint constitute legal conclusion to which no response is required.  To the extent a response is deemed to be required, however, said allegations are denied.

- 6 -

30.     The allegations set forth in paragraph 30 of the Complaint constitute legal conclusion to which no response is required.  To the extent a response is deemed to be required, however, said allegations are denied.

31.     The Defendants lack knowledge or information sufficient to form a belief regarding the veracity of the allegations set forth in paragraph 31, and said allegations are therefore denied.  By way of further response, the Defendants deny the implication that they assessed any "improper chargebacks."

32.     The Defendants lack knowledge or information sufficient to form a belief regarding the veracity of the allegations set forth in paragraph 32, and said allegations are therefore denied.  By way of further response, the Defendants admit that the Trustee has made various demands since his appointment, but has not specifically identified any "improper chargebacks" in his communications with the Defendants.  The Defendants further deny the implication that they assessed any "improper chargebacks" against the Debtors, or are otherwise indebted to the Debtors or their estates.

33.     In response to the allegations set forth in paragraph 33, the Defendants admit that they have not acceded to the Trustee's demands for payment, but deny the implication that the Trustee is legally entitled to recover any monies from the Defendants.

34.     The allegations set forth in paragraph 34 of the Complaint constitute legal conclusions to which no response is required.  To the extent a response is deemed to be required, however, said allegations are denied.

35.     The allegations set forth in paragraph 35 of the Complaint are denied.

36.     The allegations set forth in paragraph 36 of the Complaint constitute legal conclusions to which no response is required.  To the extent a response is deemed to be required, however, said allegations are denied.

37.     The allegations set forth in paragraph 37 of the Complaint constitute legal conclusions to which no response is required.  To the extent a response is deemed to be required, however, said allegations are denied.

### TRUSTEE'S SECOND CLAIM FOR RELIEF

38.     The Defendants hereby incorporate by reference their responses to paragraphs 1 through 37 of the Complaint as if fully set forth herein.

39.     The allegations set forth in paragraph 39 of the Complaint are denied as stated.  Defendants admit that, on an aggregate basis, they assessed no less than $4,035,754.90 in chargebacks, vendor allowances, and other discounts against the Debtors during the period from March 30, 1998 to August 14, 2003.  The Defendants deny the implication, however, that they bear collective responsibility for each other's actions, and note that certain of the Defendants, including Saks and SFAE, did not purchase *any* goods from, or assess *any* chargebacks against, the Debtors.

40.     The allegations set forth in paragraph 40 of the Complaint are denied.

41.     The allegations set forth in paragraph 41 of the Complaint are denied.

42.     The allegations set forth in paragraph 42 of the Complaint are denied.

43.     The allegations set forth in paragraph 43 of the Complaint constitute legal conclusions to which no response is required.  To the extent a response is deemed to be required, however, said allegations are denied.

44.     The allegations set forth in paragraph 44 of the Complaint constitute legal conclusions to which no response is required.  To the extent a response is deemed to be required, however, said allegations are denied.

45.     The allegations set forth in paragraph 45 of the Complaint are denied.

46.     The allegations set forth in paragraph 46 of the Complaint constitute legal conclusions to which no response is required.  To the extent a response is deemed to be required, however, said allegations are denied.

### TRUSTEE'S THIRD CLAIM FOR RELIEF

47.     The Defendants hereby incorporate by reference their responses to paragraphs 1 through 46 of the Complaint as if fully set forth herein.

48.     The allegations set forth in paragraph 48 of the Complaint are denied as stated.  Defendants admit that, on an aggregate basis, they assessed no less than $4,035,754.90 in chargebacks, vendor allowances, and other discounts against the Debtors during the period from March 30, 1998 to August 14, 2003.  The Defendants deny the implication, however, that they bear collective responsibility for each other's actions, and note that certain of the Defendants, including Saks and SFAE, did not purchase *any* goods from, or assess *any* chargebacks against, the Debtors.

49.     The allegations set forth in paragraph 49 of the Complaint are denied.

50.     The allegations set forth in paragraph 50 of the Complaint are denied.

51.     The allegations set forth in paragraph 51 of the Complaint are denied.

52.     The allegations set forth in paragraph 52 of the Complaint are denied.

53.     The allegations set forth in paragraph 53 of the Complaint are denied.

54.     The allegations set forth in paragraph 54 of the Complaint are denied.

55.     The allegations set forth in paragraph 55 of the Complaint are denied.

56.     The allegations set forth in paragraph 56 of the Complaint are denied.

57.     The allegations set forth in paragraph 57 of the Complaint are denied.

58.    The allegations set forth in paragraph 58 of the Complaint constitute legal conclusions to which no response is required.  To the extent a response is deemed to be required, however, said allegations are denied.

## TRUSTEE'S FOURTH CLAIM FOR RELIEF

59.    The Defendants hereby incorporate by reference their responses to paragraphs 1 through 58 of the Complaint as if fully set forth herein.

60.    The allegations set forth in paragraph 60 of the Complaint are denied as stated.  Defendants admit that, on an aggregate basis, they assessed no less than $4,035,754.90 in chargebacks, vendor allowances, and other discounts against the Debtors during the period from March 30, 1998 to August 14, 2003.  The Defendants deny the implication, however, that they bear collective responsibility for each other's actions, and note that certain of the Defendants, including Saks and SFAE, did not purchase *any* goods from, or assess *any* chargebacks against, the Debtors.

61.    The allegations set forth in paragraph 61 of the Complaint are denied.

62.    The Defendants lacks knowledge or information sufficient to form a belief regarding the allegations set forth in paragraph 62, and said allegations are therefore denied.  By way of further response, the Defendants deny the implication that any of the chargebacks they assessed against the Debtors were "unwarranted," and further deny that they made any misrepresentations to the lenders.

63.    The allegations set forth in paragraph 63 of the Complaint are denied.

64.    The allegations set forth in paragraph 64 of the Complaint are denied.

65.    The allegations set forth in paragraph 65 of the Complaint are denied.

66.    The allegations set forth in paragraph 66 of the Complaint are denied.

67.    The allegations set forth in paragraph 67 of the Complaint constitute legal conclusions to which no response is required.  To the extent a response is deemed to be required, however, said allegations are denied.

## TRUSTEE'S FIFTH CLAIM FOR RELIEF

68.    The Defendants hereby incorporate by reference their responses to paragraphs 1 through 67 of the Complaint as if fully set forth herein.

69.    The Defendants lacks knowledge or information sufficient to form a belief regarding the allegations set forth in paragraph 69, and said allegations are therefore denied.

70.    The allegations set forth in paragraph 70 of the Complaint are denied.

71.    The allegations set forth in paragraph 71 of the Complaint are denied.

72.    The allegations set forth in paragraph 72 of the Complaint are denied.

73.    The allegations set forth in paragraph 73 of the Complaint are denied.

74.    The allegations set forth in paragraph 74 of the Complaint constitute legal conclusions to which no response is required.  To the extent a response is deemed to be required, however, said allegations are denied.

## TRUSTEE'S SIXTH CLAIM FOR RELIEF

75.    The Defendants hereby incorporate by reference their responses to paragraphs 1 through 74 of the Complaint as if fully set forth herein.

76.    The Defendants lack knowledge or information sufficient to form a belief regarding the allegations set forth in paragraph 76 to the extent they relate to the alleged conduct of Mr. Connors and the debtor's other fiduciaries, and said allegations are therefore denied.  The remainder of the allegations of paragraph 76 of the Complaint are also denied.

77.    The allegations set forth in paragraph 77 of the Complaint are denied.

78.    The allegations set forth in paragraph 78 of the Complaint are denied.

79.    The allegations set forth in paragraph 79 of the Complaint constitute legal conclusions to which no response is required.  To the extent a response is deemed to be required, however, said allegations are denied.

## TRUSTEE'S SEVENTH CLAIM FOR RELIEF

80.    The Defendants hereby incorporate by reference their responses to paragraphs 1 through 79 of the Complaint as if fully set forth herein.

81.    The Defendants lack knowledge or information sufficient to form a belief regarding the veracity of the allegations set forth in paragraph 81 of the Complaint, and said allegationed are therefore denied.

82.    The allegations set forth in paragraph 82 of the Complaint are denied.

83.    The allegations set forth in paragraph 83 of the Complaint are denied.

84.    The allegations set forth in paragraph 84 of the Complaint are denied.

85.    The allegations set forth in paragraph 85 of the Complaint constitute legal conclusions to which no response is required.  To the extent a response is deemed to be required, however, said allegations are denied.

## TRUSTEE'S EIGHTH CLAIM FOR RELIEF

86.    The Defendants hereby incorporate by reference their responses to paragraphs 1 through 85 of the Complaint as if fully set forth herein.

87.    The allegations set forth in paragraph 87 of the Complaint are denied.

88.    The allegations set forth in paragraph 88 of the Complaint constitute legal conclusions to which no response is required.  To the extent a response is deemed to be required, however, said allegations are denied.

## TRUSTEE'S NINTH CLAIM FOR RELIEF

89.     The Defendants hereby incorporate by reference their responses to paragraphs 1 through 88 of the Complaint as if fully set forth herein.

90.     The Defendants lack knowledge or information sufficient to form a belief regarding the veracity of the allegations set forth in paragraph 90 of the Complaint, and said allegations are therefore denied.

91.     The allegations set forth in paragraph 91 of the Complaint are denied.

92.     The Defendants lack knowledge or information sufficient to form a belief regarding the veracity of the allegations set forth in paragraph 92, and said allegations are therefore denied.

93.     The allegations set forth in paragraph 93 of the Complaint constitute legal conclusions to which no response is required.  To the extent a response is deemed to be required, however, said allegations are denied.

## TRUSTEE'S TENTH CLAIM FOR RELIEF

94.     The Defendants hereby incorporate by reference their responses to paragraphs 1 through 93 of the Complaint as if fully set forth herein.

95.     In response to the allegations set forth in paragraph 95, the Defendants deny that any chargebacks assessed against the Debtors were made for less than reasonably equivalent value.  The Defendants lack knowledge or information sufficient to form a belief regarding the veracity of the remaining allegations set forth in paragraph 95, and said allegations are therefore denied.

96.     The allegations set forth in paragraph 96 of the Complaint constitute legal conclusions to which no response is required.  To the extent a response is deemed to be required, however, said allegations are denied.

- 13 -

## TRUSTEE'S ELEVENTH CLAIM FOR RELIEF

97.    The Defendants hereby incorporate by reference their responses to paragraphs 1 through 96 of the Complaint as if fully set forth herein.

98.    The Defendants lack knowledge or information sufficient to form a belief regarding the veracity of the allegations set forth in paragraph 98 to the extent they relate to the Debtors' solvency, and said allegations are therefore denied. The remaining allegations of paragraph 98 are also denied.

99.    The allegations set forth in paragraph 99 of the Complaint constitute legal conclusions to which no response is required. To the extent a response is deemed to be required, however, said allegations are denied.

100.    The allegations set forth in paragraph 100 of the Complaint constitute legal conclusions to which no response is required. To the extent a response is deemed to be required, however, said allegations are denied.

## TRUSTEE'S TWELFTH CLAIM FOR RELIEF

101.    The Defendants hereby incorporate by reference their responses to paragraphs 1 through 100 of the Complaint as if fully set forth herein.

102.    The Defendants lack knowledge or information sufficient to form a belief regarding the veracity of the allegations set forth in paragraph 102 of the Complaint, and said allegations are therefore denied.

103.    The allegations set forth in paragraph 103 of the Complaint constitute legal conclusions to which no response is required. To the extent a response is deemed to be required, however, said allegations are denied.

104.    The Defendants lack knowledge or information sufficient to form a belief regarding the veracity of the allegations set forth in paragraph 104, and said allegations are therefore denied.

105.    The allegations set forth in paragraph 105 of the Complaint constitute legal conclusions to which no response is required.  To the extent a response is deemed to be required, however, said allegations are denied.

106.    The allegations set forth in paragraph 106 of the Complaint constitute legal conclusions to which no response is required.  To the extent a response is deemed to be required, however, said allegations are denied.

## TRUSTEE'S THIRTEENTH CLAIM FOR RELIEF

107.    The Defendants hereby incorporate by reference their responses to paragraphs 1 through 106 of the Complaint as if fully set forth herein.

108.    In response to the allegations set forth in paragraph 108, the Defendants deny that any chargebacks assessed against the Debtors were made for less than reasonably equivalent value.  The Defendants lack knowledge or information sufficient to form a belief regarding the remaining allegations set forth in paragraph 108, and said allegations are therefore denied.

109.    The allegations set forth in paragraph 109 of the Complaint constitute legal conclusions to which no response is required.  To the extent a response is deemed to be required, however, said allegations are denied.

110.    The allegations set forth in paragraph 110 of the Complaint constitute legal conclusions to which no response is required.  To the extent a response is deemed to be required, however, said allegations are denied.

## TRUSTEE'S FOURTEENTH CLAIM FOR RELIEF

111.    The Defendants hereby incorporate by reference their responses to paragraphs 1 through 110 of the Complaint as if fully set forth herein.

112.    The Defendants lack knowledge or information sufficient to form a belief regarding the allegations set forth in paragraph 112 of the Complaint, and said allegations are therefore denied.

113.    The allegations set forth in paragraph 113 of the Complaint are denied.

114.    The allegations set forth in paragraph 114 of the Complaint are denied.

115.    The allegations set forth in paragraph 115 of the Complaint constitute legal conclusions to which no response is required.  To the extent a response is deemed to be required, however, said allegations are denied.

116.    The allegations set forth in paragraph 116 of the Complaint constitute legal conclusions to which no response is required.  To the extent a response is deemed to be required, however, said allegations are denied.

## TRUSTEE'S FIFTEENTH CLAIM FOR RELIEF

117.    The Defendants hereby incorporate by reference their responses to paragraphs 1 through 116 of the Complaint as if fully set forth herein.

118.    The allegations set forth in paragraph 118 of the Complaint are denied.

119.    The allegations set forth in paragraph 119 of the Complaint constitute legal conclusions to which no response is required.  To the extent a response is deemed to be required, however, said allegations are denied.

WHEREFORE, the Defendants respectfully request the entry of judgment in their favor and against the Trustee, together with such other and further relief as this Court deems just and proper.

- 16 -

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

120.    The Complaint fails to state a claim upon which relief can granted.

### SECOND AFFIRMATIVE DEFENSE

121.    The relief sought by the Complaint is barred, in whole or in part, by the applicable statute of limitations.

### THIRD AFFIRMATIVE DEFENSE

122.    The Trustee lacks standing to assert, and the Court thus lacks subject matter jurisdiction to adjudicate, claims based on the Defendants' alleged involvement in fraudulent schemes perpetrated by the Debtors' own officers and directors, including any claims allegedly assigned to the Trustee by allegedly innocent creditors of the Debtors.

### FOURTH AFFIRMATIVE DEFENSE

123.    The relief sought by the Complaint is barred by the doctrine of *in pari delicto*.

### FIFTH AFFIRMATIVE DEFENSE

124.    The relief sought by the Complaint is barred by the doctrine of laches.

### SIXTH AFFIRMATIVE DEFENSE

125.    The relief sought by the Complaint is barred by the doctrine of unclean hands.

### SEVENTH AFFIRMATIVE DEFENSE

126.    The relief sought by the Complaint is barred by the doctrine of waiver.

### EIGHTH AFFIRMATIVE DEFENSE

127.    The relief sought by the Complaint is barred by the doctrine of accord and satisfaction.

## NINTH AFFIRMATIVE DEFENSE

128.    The relief sought by the Complaint is barred by the doctrine of estoppel.

## RESERVATION OF RIGHTS

129.    The Defendants reserve the right to amend this answer and to include additional affirmative defenses as and when it may become necessary or appropriate to do so, whether as the result of further investigation, discovery, or otherwise.

## DEMAND FOR A JURY TRIAL

130.    The Defendants hereby demand a trial by jury with respect to all claims so triable.

Respectfully submitted,

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP

Dated: February 20, 2007

By: /s/ Jeffrey N. Rich
     Jeffrey N. Rich (JR7183)
599 Lexington Avenue
New York, NY 10022
(212) 536-3900

Attorneys for Defendants, Saks Incorporated,
Saks Fifth Avenue, Inc., Carson Pirie Scott,
Parisian, Inc., Younkers, Profitt's, and McRaes, Inc.

**EXHIBIT C**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| | : | |
| KLEINERT'S, INC., et. al., | : | Case Nos. 03 B 41140 (BRL) |
| | : | through Case No. 03 B 41144 |
| | : | (BRL) |
| | : | |
| Debtors. | : | Jointly Administered |

-----------------------------------------------------------------x

| | | |
|---|---|---|
| | : | |
| DAVID R. KITTAY, TRUSTEE, | : | Adv. Pro. No. 05-      (BRL) |
| | : | |
| Plaintiff, | : | |
| | : | |
| - against - | : | **COMPLAINT** |
| | : | |
| SAKS INCORPORATED, | : | |
| SAKS FIFTH AVENUE, INC., | : | |
| CARSON PIRIE SCOTT, | : | |
| PARISIAN, INC., | : | |
| YOUNKERS, | : | |
| PROFITT'S and | : | |
| MCRAES, INC., | : | |
| | : | |
| Defendants. | : | |

-----------------------------------------------------------------x

David R. Kittay (the "Trustee" or "Plaintiff"), as Chapter 7 Trustee of Kleinert's, Inc.[1] and its

wholly-owned subsidiaries (collectively, "Kleinert's"), by his attorneys Kittay & Gershfeld, P.C., for his

complaint against Saks Incorporated, Saks Fifth Avenue, Inc., Carson Pirie Scott, Parisian, Inc.,

Younkers, Profitt's and McRaes, Inc. (collectively, "Defendants") alleges as follows:

_____

[1]    These jointly administered bankruptcy estates are comprised of Kleinert's, Inc.; Kleinert's,
Inc. of New York; Kleinert's, Inc. of Alabama; Kleinert's Retail, Inc. and Kleinert's, Inc. of Delaware.

## INTRODUCTION

1.      Defendant Saks Incorporated operates numerous department stores through various subsidiaries including Saks Fifth Avenue, Inc., Carson Pirie Scott, Parisian, Inc., Younkers, Profitt's and McRaes, Inc.  From no later than March 30, 1998, through August 14, 2003, Kleinert's, a clothing manufacturer, sold various merchandise to Defendants.  Throughout this period, Defendants improperly deducted chargebacks from accounts payable due to Kleinert's.

2.      In the clothing industry, chargebacks are pre-scheduled liquidated damages that a purchaser would deduct from accounts payable due to a vendor when shipments fail to conform to specifications set out in a purchaser's purchase orders.  In addition, chargebacks can take the form of rebates from a vendor to a purchaser for merchandise that the purchaser is unable to sell by the end of a specified period.  Defendants, however, improperly assessed chargebacks (the "Chargebacks") against Kleinert's, even when merchandise sold and delivered to Defendants conformed with all of Defendants' specifications.  In addition, Defendants failed to provide Kleinert's with the documents necessary to investigate the validity of the Chargebacks, despite Kleinert's repeated requests for such information.  Defendants also claimed and took advantage of discounts offered to them for timely payments when, in fact, Defendants often paid Kleinert's after the stipulated time to use the discounts had passed.  Defendants used these improper Chargebacks and discounts to generate an even greater profit at the cost of Kleinert's financial well-being.

3.      By improperly assessing Chargebacks against Kleinert's, Defendants withheld significant monies that were properly due to Kleinert's.  These practices caused Kleinert's extreme financial distress and contributed to its eventual bankruptcy filing.

2

## JURISDICTION AND VENUE

4.      On May 7, 2003 (the "Petition Date"), Kleinert's and its wholly-owned subsidiaries, as set forth below in paragraph 10, filed separate voluntary petitions for relief under Chapter 11, Title 11 of the United States Code (the "Bankruptcy Code") in the Southern District of New York.  The cases were subsequently consolidated for administrative purposes.

5.      On or about August 14, 2003, the voluntary Chapter 11 cases were converted to cases under Chapter 7 of the Bankruptcy Code and David R. Kittay was appointed Chapter 7 Trustee of Kleinert's respective estates.

6.      This Court has jurisdiction over this matter pursuant to Sections 157 and 1334 of Title 28 of the United States Code ("Title 28").

7.      Venue of the Chapter 7 case and this matter in this District is proper pursuant to Sections 1408 and 1409 of Title 28, respectively.

8.      This action is a core proceeding pursuant to Sections 157 (b)(2)(A), (E) and (O) of Title 28.

## THE PARTIES

9.      By Order of the Court dated August 14, 2003, Plaintiff David R. Kittay, Esq. was appointed as the interim Chapter 7 Trustee pursuant to Section 701 of the Bankruptcy Code and subsequently qualified as Trustee pursuant to Bankruptcy Code Section 702(d).  He maintains his principal place of business at 100 White Plains Road, Tarrytown, New York 10591.

10.      Kleinert's, Inc. is a Pennsylvania Corporation and is a holding company that owns, directly or indirectly, 100% of the issued and outstanding common stock of (I) Kleinert's, Inc. of

3

Alabama, an Alabama corporation responsible for the distribution of all merchandise; (ii) Kleinert's, Inc. of New York, a New York corporation overseeing marketing, sales, design and sourcing of the Kleinert's line and the Buster Brown line of clothing; (iii) Kleinert's Retail, Inc., an Alabama corporation that owned and operated various Buster Brown retail stores; and (iv) Kleinert's, Inc. of Delaware, a Delaware corporation that owned the intellectual property licensed to the affiliated companies.

11.     Defendant Saks Incorporated is a Tennessee corporation with its principal office located at 750 Lakeshore Parkway, Birmingham, Alabama 35211, Attn: James A. Coggin, President, and may be served at such address.

12.     Defendant McRae's, Inc. is a Mississippi corporation with its principal office located at 750 Lakeshore Parkway, Birmingham, Alabama 35211, Attn: James A. Coggin, President, and may be served at such address.

13.     Defendant Parisian, Inc. is an Alabama corporation with its principal office located at 750 Lakeshore Parkway, Birmingham, Alabama 35211, Attn: James A. Coggin, President, and may be served at such address.

14.     Defendant Saks Fifth Avenue, Inc. is a Massachusetts corporation with its principal office located at 750 Lakeshore Parkway, Birmingham, Alabama 35211, Attn: James A. Coggin, President, and may be served at such address.

15.     Defendant Carson Pirie Scott is a Tennessee corporation with its principal office located at 750 Lakeshore Parkway, Birmingham, Alabama 35211, Attn: James A. Coggin, President, and may be served at such address.

16.      Defendant Younkers is a Tennessee corporation with its principal office located at 750 Lakeshore Parkway, Birmingham, Alabama 35211, Attn: James A. Coggin, President, and may be served at such address.

17.      Defendant Profitt's is a Tennessee corporation with its principal office located at 750 Lakeshore Parkway, Birmingham, Alabama 35211, Attn: James A. Coggin, President, and may be served at such address.

## FACTS

18.      Beginning no later than March 30, 1998, Kleinert's and Defendants engaged in a business relationship whereby Defendants ordered merchandise from Kleinert's by issuing a purchase order (the "Purchase Order") to Kleinert's.  At the time of the sales in questions, purchase orders or electronic transmissions which served as purchase orders – so called "EDIs") – typically were drafted by the retail vendor and detailed the style, quantity and price for an order and contained terms and conditions governing the business relationship between Defendants and Kleinert's.  The Defendants utilized such EDIs and purchaser orders when doing business with Kleinert's.

19.      Once a Purchase Order was received by Kleinert's, Kleinert's would fill Defendants' Purchase Order pursuant to Defendants' specifications and terms and conditions.

20.      After Kleinert's filled the Purchase Order, Kleinert's would send Defendants an invoice seeking payment for its account receivable.

21.      Each Purchase Order constituted a contract between the Defendants and Kleinert's. Pursuant to the terms of these contracts, Kleinert's agreed to sell merchandise to Defendants.  In turn, Defendants agreed to purchase such merchandise at agreed-upon prices from Kleinert's.

5

22.     Purchase orders and EDIs allowed the Defendants to deduct Chargebacks from the amounts owed to Kleinert's as liquidated damages for alleged markdowns, short shipments, late deliveries, mis-markings and various other miscellaneous claimed errors.

23.     In addition to these Chargebacks, Defendants issued Chargebacks to Kleinert's representing the difference between what Defendants expected to sell of Kleinert's merchandise and what Defendants actually sold.

24.     Defendants claimed such Chargebacks against Kleinert's for at least $4,035,754.90 over the course of their business relationship.

25.     Defendants claimed the above-referenced Chargebacks by deducting the amount of each chargeback from the accounts payable due to Kleinert's.

26.     From no later than March 30, 1998, through August 14, 2003, Defendants purchased and accepted large quantities of merchandise from Kleinert's, pursuant to Defendants' form of Purchase Order and/or EDI, for which Kleinert's issued invoices to Defendants.  Over the course of the business relationship, these invoices totaled at least $33,242,925.42.

27.     Defendants' Chargebacks against Kleinert's constituted approximately 12.14% of Kleinert's total sales to Defendants.

28.     Many of the Chargebacks issued by Defendants were unlawful and improper and the deductions taken by Defendants from the accounts payable due to Kleinert's were, consequently, also unlawful and improper.  These unlawful and improper Chargebacks constitute substantial deductions and credits that were not allowed under the terms of the Purchase Orders between Defendants and Kleinert's.

6

29.    Defendants' improper Chargebacks caused Kleinert's extreme financial hardship and contributed to Kleinert's bankruptcy filing.

## AS AND FOR A FIRST CLAIM FOR RELIEF
## (BREACH OF CONTRACT)

30.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 to 29 hereof as if fully set forth herein.

31.    Each Purchase Order or EDI constituted a valid contract between Kleinert's and Defendants.

32.    As contracts, the Purchase Order and/or EDI created duties for Kleinert's, including the duty to provide merchandise to Defendants that conformed to Defendants' specifications.

33.    As contracts, each Purchase Order and/or EDI created duties for Defendants, including Defendants' duty to compensate Kleinert's for merchandise delivered pursuant to the terms of the Purchase Order and/or EDI.

34.    Kleinert's satisfied all of its obligations under each Purchase Order and/or EDI.

35.    Defendants failed to satisfy their obligations under the Purchase Order(s) and/or EDIs when they withheld excessive and improper Chargebacks from Kleinert's.

36.    By improperly withholding excessive and improper Chargebacks from Kleinert's, Defendants violated the Purchase Order contracts and/or EDIs.

37.    Defendants' violation of the Purchase Order contracts and/or EDIs caused Kleinert's extreme financial distress that contributed to Kleinert's eventual bankruptcy.

38.    As a result of Kleinert's insolvency and bankruptcy, Kleinert's incurred liabilities of at

7

least $40,000,000.

39.    Such losses were clearly foreseeable by Defendants, who are liable therefore, in an amount not less than $40,000,000.

## AS AND FOR A SECOND CLAIM FOR RELIEF
### (BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING)

40.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 to 29 hereof as if fully set forth herein.

41.    Each Purchase Order and/or EDI constituted a valid contract between Kleinert's and Defendants.

42.    Defendants owed a duty of good faith and fair dealing to Kleinert's.

43.    Defendants breached their duty of good faith and fair dealing by assessing improper and invalid Chargebacks against Kleinert's.

44.    Defendants' breached their duty of good faith and fair dealing caused Kleinert's extreme financial distress that contributed to Kleinert's eventual bankruptcy.

45.    As a result of Kleinert's insolvency and bankruptcy, Kleinert's incurred liabilities of at least $40,000,000.

46.    Such losses were clearly foreseeable by Defendants, who are liable therefore, in an amount not less than $40,000,000.

## AS AND FOR A THIRD CLAIM FOR RELIEF
### (FRAUD)

47.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 to 29 hereof as if fully set forth herein.

48.    From no later than March 30, 1998, through August 14, 2003, Defendants charged

9

back at least $4,035,754.90 to Kleinert's.

49.     Defendants represented to Kleinert's that these Chargebacks were valid and proper.

50.     Defendants knew or should have known that many, if not all of these Chargebacks were invalid and improper.

51.     Kleinert's relied on Defendants' representations that these Chargebacks were valid and proper.

52.     Defendants represented that the improper Chargebacks were valid for the purpose of inducing Kleinert's not to pursue the entire amount of the accounts payable to Kleinert's from Defendants.

53.     In reliance on Defendants' false representations that the Chargebacks were valid and proper, Kleinert's often did not seek payment for all of the amounts improperly charged back by Defendants.

54.     Kleinert's reliance on Defendants' representation that the improper Chargebacks were valid caused Kleinert's to lose approximately $4,035,754.90 in accounts receivable from Defendants.

55.     The loss of the money from the accounts receivable caused Kleinert's extreme financial distress that contributed to Kleinert's eventual bankruptcy.

56.     As a result of Kleinert's insolvency and bankruptcy, Kleinert's incurred liabilities of at least $40,000,000.

57.     Such losses were clearly foreseeable by Defendants, who are liable therefore, in an amount not less than $40,000,000.

10

## AS AND FOR A FOURTH CLAIM FOR RELIEF
### (UNJUST ENRICHMENT)

58.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 to 29 hereof as if fully set forth herein.

59.    From no later than March 30, 1998, through August 14, 2003, Defendants charged back at least $4,035,754.90 to Kleinert's.

60.    These Chargebacks improperly benefitted Defendants because they constituted money that Defendants improperly retained instead of paying to Kleinert's.

61.    Defendants represented to Kleinert's that these Chargebacks were valid and proper.

62.    Defendants knew or should have known that many, if not all, of the Chargebacks were invalid and improper.

63.    It is inequitable for Defendants to keep the funds not turned over as alleged Chargebacks because the funds constitute money validly due and owing to Kleinert's.

64.    By virtue of the foregoing, Defendants are liable to reimburse Kleinert's estate the amount of the improper and invalid Chargebacks.

65.    As a result of Kleinert's insolvency and bankruptcy, Kleinert's incurred liabilities of at least $40,000,000.

66.    Such losses were clearly foreseeable by Defendants, who are liable therefore, in an amount not less than $40,000,000.

11

## AS AND FOR A FIFTH CLAIM FOR RELIEF
## (TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE)

67.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 to 29 hereof as if fully set forth herein.

68.     Each Purchase Order and/or EDI constituted a valid contract between Kleinert's and Defendants.

69.     Pursuant to each Purchase Order and/or EDI, Kleinert's was entitled to receive payment for the merchandise sold to Defendants and Kleinert's, therefore, expected to receive such payment.

70.     Pursuant to the Purchase Orders, Defendants were aware that Kleinert's was entitled to receive payment for the merchandise sold to Defendants and that Kleinert's, therefore, expected to receive such payment.

71.     Defendants intentionally and wrongfully interfered with Kleinert's expectation of payment by issuing the improper and invalid Chargebacks.

72.     By means of the improper and invalid Chargebacks, Defendants prevented Kleinert's from receiving payment for the merchandise sold by Kleinert's to Defendants.

73.     But for the invalid and improper Chargebacks by Defendants, Kleinert's would have received the total amounts due to and expected by it from Defendants under each Purchase Order and/or EDI.

74.     By assessing improper and invalid Chargebacks against Kleinert's, Defendants caused Kleinert's extreme financial distress that contributed to Kleinert's eventual bankruptcy.

12

75.     As a result of Kleinert's insolvency and bankruptcy, Kleinert's incurred liabilities of at least $40,000,000.

76.     Such losses were clearly foreseeable by Defendants, who are liable therefore, in an amount not less than $40,000,000.

## AS AND FOR A SIXTH CLAIM FOR RELIEF
### (QUANTUM MERUIT)

77.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 to 29 hereof as if fully set forth herein.

78.     Over the course of its business relationship with Defendants, Kleinert's provided valuable merchandise to Defendants.

79.     Defendants accepted the valuable merchandise from Kleinert's and used and benefitted from such merchandise.

80.     Kleinert's expected to be paid in full for the valuable merchandise that it provided to Defendants.

81.     Defendants did not pay Kleinert's in full for the valuable merchandise that Kleinert's provided to Defendants because Defendants assessed improper and invalid Chargebacks against Kleinert's.

82.     By virtue of the foregoing, Defendants are liable to reimburse Kleinert's for the value of the improperly assessed Chargebacks.

## AS AND FOR A SEVENTH CLAIM FOR RELIEF
### (CONVERSION)

83.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 to 29

13

hereof as if fully set forth herein.

84.     As a result of the valuable merchandise sold by Kleinert's to Defendants, Kleinert's

booked accounts receivable that were due from Defendants.

85.     Defendants applied improper Chargebacks to the accounts payable to Kleinert's,

thereby depriving Kleinert's of monies due to Kleinert's.

86.     Defendants assessed the improper and invalid Chargebacks against Kleinert's without

justification and without Kleinert's consent.

87.     By assessing improper and invalid Chargebacks against Kleinert's, Defendants

exercised wrongful control over Kleinert's property.

88.     Prior to filing for bankruptcy, Kleinert's sought the return of some, if not all, of the

improper Chargebacks from Defendants.

89.     After his appointment as Chapter 7 Trustee, Plaintiff sought the return of the improper

Chargebacks from Defendants.

90.     Defendants failed and refused to return the improper Chargebacks to Kleinert's and/or

Plaintiff.

91.     Defendants converted Kleinert's accounts receivable by assessing improper and invalid

Chargebacks against Kleinert's, thereby causing Kleinert's extreme financial distress that contributed to

Kleinert's eventual bankruptcy.

92.     As a result of Kleinert's insolvency and bankruptcy, Kleinert's incurred liabilities of at

least $40,000,000.

93.     Such losses were clearly foreseeable by Defendants, who are liable therefore, in an

14

amount not less than $40,000,000.

## AS AND FOR AN EIGHTH CLAIM FOR RELIEF
### (TURNOVER)

94.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 to 29 hereof as if fully set forth herein.

95.    As a result of the valuable merchandise sold by Kleinert's to Defendants, Kleinert's booked accounts receivable that were due from Defendants.

96.    Defendants assessed improper and invalid Chargebacks against the accounts payable to Kleinert's.

97.    Since the Chargebacks assessed by Defendants against Kleinert's were improper and invalid, Defendants remain in possession and control of Kleinert's property.

98.    Kleinert's property, which is currently held by Defendants, constitutes an asset of Kleinert's bankruptcy estate that has benefit and value to Kleinert's bankruptcy estate.

99.    Based on the foregoing, the Court should compel Defendants to turnover all of Kleinert's property to Plaintiff, including, without limitation, the money retained by Defendants from accounts payable due to Kleinert's as improper and invalid Chargebacks.

## AS AND FOR A NINTH CLAIM FOR RELIEF
### (ACCOUNTING)

100.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 to 29 hereof as if fully set forth herein.

15

101.    Defendants have profited from the assessment of improper and invalid Chargebacks against Kleinert's accounts receivable for which no consideration was given to Kleinert's.

102.    By reason of the foregoing, Plaintiff is entitled to an accounting of all of the Chargebacks assessed against Kleinert's by Defendants from no later than March 30, 1998 through the present and an accounting of the reasons for which each chargeback was assessed.

WHEREFORE,  Plaintiff respectfully requests entry of judgment against Defendants (I) awarding damages to the Trustee, in an amount to be determined at trial but not less than $40,000,000, plus interest and reasonable attorneys' fees, related to Defendants' breach of contract; (ii) awarding damages to the Trustee, in an amount to be determined at trial but not less than $40,000,000, plus interest and reasonable attorneys' fees, related to Defendants' breach of duty of good faith and fair dealing; (iii) awarding damages to the Trustee, in an amount to be determined at trial but not less than $40,000,000, plus interest, punitive damages and reasonable attorneys' fees, related to Defendants' fraud; (iv) awarding damages to the Trustee, in an amount to be determined at trial but not less than $40,000,000, plus interest and reasonable attorneys' fees, related to Defendants' unjust enrichment; (v) awarding damages to the Trustee, in an amount to be determined at trial but not less than $40,000,000, plus interest and reasonable attorneys' fees, related to Defendants' tortious interference with prospective economic advantage; (vi) awarding damages to the Trustee, in an amount to be determined at trial but not less than $4,035,754.90, plus interest and reasonable attorneys' fees, based on quantum meruit; (vii) awarding damages to the Trustee, in an amount to be determined at trial but not less than $40,000,000, plus interest and reasonable attorneys' fees, related to Defendants' conversion; (viii) directing Defendants to turn over all property of Kleinert's, including without limitation,

16

the monies withheld from Kleinert's as improper Chargebacks; (ix) directing an accounting of all of the

Chargebacks made by Defendants from no later than March 30, 1998, through the present and the

reasons therefor; (x) awarding punitive damages to the Trustee against Defendants in an amount to be

determined at trial; and (xi) granting the Trustee such other relief as is just and proper.

Dated:  Tarrytown, New York
        October 25, 2005

                              KITTAY & GERSHFELD, P.C.
                              Attorneys for Chapter 7 Trustee


                              By:___/s/ Judith L. Siegel_____
                                  Judith L. Siegel (JS-1208)
                                  100 White Plains Road, 2nd Floor
                                  Tarrytown, New York 10591
                                  (914) 332-8000

17